## J. D. GLENN ET AL. v. W. A. MICKEY ET AL.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, IN EQUITY.

Argued October 22, 1889—Decided January 6, 1890.
[To be reported.]

1. Where an assignee for the benefit of creditors sells assigned real estate discharged of liens, with the consent of lien creditors but without an order of court, the Court of Common Pleas has jurisdiction by bill in equity to restrain a conveyance and order a re-sale, on the ground of improper conduct in the sale on the part of the assignee: § 13, act of June 16, 1836, P. L. 789.
2. If the assigned real estate is offered at public sale both in parcels and as a whole, and is sold as a whole for a price less than the amount of the bids from responsible bidders in parcels, a conveyance by the assignee may be restrained and a re-sale ordered, although there is no proof of actual fraud or collusion between the assignee and the purchaser.

Before STERRETT, GREEN, CLARK, McCOLLUM and MITCHELL, JJ.

Master's Report.

No. 158 October Term 1889, Sup. Ct.; court below, No. 573, C. P. in Equity.

On September 18, 1888, J. D. Glenn, in his own right and in right of his wife, Sarah S. Glenn, and Sarah S. Glenn, in her own right, filed a bill in equity against W. A. Mickey, assignee for benefit of creditors of John D. Glenn, with Joseph R. Manifold and John Dye, praying, upon the facts therein averred, that W. A. Mickey, the said assignee, be restrained and enjoined from executing and delivering deeds for portions of the assigned real estate sold to Joseph R. Manifold and John. Dye; that the sales of said real estate to said Manifold and Dye be declared null and void; that the said assignee be ordered and directed to make a re-sale of said real estate; and for other and further relief.

The defendants filed responsive answers to the bill and averred that the plaintiffs were not entitled to the relief prayed for, because: 1. They had an adequate remedy at law. 2. They were not entitled to equitable relief upon the facts averred in the bill. 3. The rights of the creditors of the assigned estate were superior to those of the plaintiffs, and they should not be delayed by such proceeding. 4. The court, sitting in equity, had no jurisdiction of the matters set out in the plaintiffs' bill.

The cause having been put at issue by replication filed, it was referred to *Mr. Alex. Wilson*, as examiner and master, who on May 24, 1889, filed a report, which in part was as follows:

On April 6, 1888, J. D. Glenn, of Canton township, made an assignment for the benefit of his creditors, to William A. Mickey, Esq., his wife, Sarah S. Glenn, joining therein. The assignment was executed and acknowledged in due form of law by the assignor and his wife, and was duly recorded. Mr. Mickey gave bond and entered upon the discharge of his duties at once. An inventory was filed April 19, 1888. The personal estate of the assignor was appraised at $1,191.40. He was also the owner of a tract of land, on which he resided, situated in said township about one and a half miles north of Washington, Pa., on the Hickory road, containing 160 acres. With the consent of the lien creditors the assignee sold the real estate at public sale on August 30, 1888, on the premises.

It was knocked down to Jos. R. Manifold at his bid of $76.50 per acre.

The original bill in this case was filed September 18, 1888; October 29, 1888, amendment with additional matter filed in writing, which was afterwards incorporated into the printed amended bill. Each of the defendants filed an answer, and on February 4, 1889, the undersigned was appointed examiner and master.

The plaintiffs in their amended bill charge that the salé of the real estate to Manifold was the result of a fraudulent scheme entered into by him, Dye and Mickey, secretly, artfully and collusively, for the purpose of enabling Manifold and Dye to procure the land at an under-value and silence competition on the part of Mrs. Glenn; and they pray that the assignee be restrained and enjoined from executing and delivering a deed to Manifold; that the sale be declared null and void, and the assignee be ordered again to make public sale of the said real estate on the terms and conditions most advantageous to the creditors of Glenn, and Sarah S. Glenn and family; that the assignee be restrained and enjoined from executing and delivering a deed for any part of the real estate to Dye, and for such other and further relief as to equity and good conscience appertains.

Each of the defendants filed an answer explicitly denying the charge of fraud, and averring that they did not resort to any artifice or trickery, or enter into any conspiracy or collusive scheme to enable Manifold and Dye, or either of them, to obtain the land at an under-value or silence competition on the part of Mrs. Glenn. . . . . .

In this case no demurrers were filed by the defendants to the amended bill, but in their answers they deny the jurisdiction of a court of equity; they say the plaintiffs have an adequate remedy at law and are not entitled to equitable relief on account of the matters disclosed in the bill. In Adams's App., 113 Pa. 449, Mr. Justice STERRETT says: "This question should be determined, not by what may have been shown by the answer or the testimony adduced in support thereof, but by what appears on the face of the bill itself. If the averments therein contained, assuming them to be true, present a case of which equity has either concurrent or exclusive jurisdiction, the bill

should not have been . dismissed, especially in view of the fact that the appellees did not object in limine, by plea or otherwise, to the jurisdiction of the court."

Had the assignee obtained an order of sale from the Court of Common Pleas, under the provisions of the act of February 17, 1876, P. L. 4, doubtless the plaintiffs might have appeared and objected to the confirmation of a sale made in pursuance of the order, on the grounds set forth in their bill; but he sold the land with the consent of the lien creditors, as he had a right to do, and he is not required to have the sale confirmed by the court. While the Court of Common Pleas has control over the assignee, under the provisions of the acts of assembly relating to assignments for the benefit of creditors, and may compel him to perform the duties therein prescribed, it does not follow that in a case like the present one the court may not exercise chancery powers. The master is of opinion that the charges of fraud in the bill, assuming them to be true, present a case of which equity has jurisdiction.

The defendants having in their answers denied the allegations of fraud contained in the bill, the burden of proof is upon the plaintiffs to establish them by satisfactory evidence. The doctrine of the cases in this state is, that while fraud may be proved, like any other fact tending to establish its existence, yet it is a serious accusation and is not to be lightly inferred. It is not sufficient to charge fraud, and prove in support thereof slight circumstances of suspicion only. To be of any avail it must be clearly proved. The law requires evidence of fraud to be such as will lead to a satisfactory conclusion, such as will satisfy the reasonable conscience and intelligent judgment: Morton v. Weaver, 99 Pa. 47; Mead v. Conroe, 113 Pa. 220.

—The master, carefully and at length reviewing all the testimony, establishing, among others, the facts which sufficiently appear in the opinion of this court, concluded:

The master has carefully considered all the evidence in the case, and finds that it is inadequate to satisfy him that the defendants or either of them resorted to artifice or trickery to procure the land at less than its value, or to silence competition on the part of Mrs. Glenn; or, that they or either of them entered into any secret agreement or fraudulent scheme to enable Manifold and Dye to procure the farm at an under-value; and he

therefore recommends that the bill be dismissed at the costs of the plaintiffs.

Mrs. Glenn in her testimony says, that she will pay $82 per acre for the 60 acre piece, if it is again put up at public sale, and that she has made arrangements to enable her to do so with her own money and what John H. Little and Dr. John W. Kelly have offered to furnish her in addition. This offer of Mr. Little and Dr. Kelly is in writing, and was offered in evidence by the plaintiffs and is marked exhibit D. The plaintiffs also offered in evidence an offer of William Hough in writing, exhibit D, to bid $80 per acre on the 100 acre piece, if it is directed to be again sold by the assignee. Also an offer by L. McCarrell, Esq., in writing, marked exhibit E, to bid $90 per acre for the whole tract of 160 acres, if it is directed to be again sold by the assignee. These papers, exhibits D and E, are hereto attached and made part of this report.

Defendants' counsel objected to these offers for the reasons, that Mrs. Glenn and Mr. Little had their day at the sale and a full opportunity to bid; that neither Mr. Hough nor McCarrell offer security for the carrying out of their bids, and also because a court of equity has no right to order a re-sale, and also a general objection to all these offers, that the farm has been offered at public sale with fair notice to all purchasers to bid. But the master is of opinion that the plaintiffs have a right to give these offers in evidence. Whether they are good without security, or whether a court of equity has a right to order a re-sale of the land, need not be discussed by the master, as he has recommended that the bill be dismissed.

All of which is respectfully submitted.

To the foregoing report, the plaintiffs filed various exceptions, which were overruled by the master and filed therewith. Said exceptions having been renewed and argued, on July 8, 1889, the court, McILVAINE, P. J., delivered the following opinion.

Twenty-two exceptions have been taken to the master's report filed in this case. It is unnecessary, however, to consider them separately, as there is but one vital question in the case, and that is, have the plaintiffs satisfactorily shown such a state of facts as would move a chancellor to set aside the sale of the real estate made by the assignee to his co-defendants?

The plaintiffs seek to have this sale set aside on two grounds : (1) On the ground that the sale was fraudulent, and (2) on the ground that the property could be sold for a much higher figure if a re-sale thereof was now made.

1. It is claimed that the defendants in consummating this sale resorted to artifice and trickery and entered into a secret agreement and fraudulent scheme to the injury of the plaintiffs. The sum and substance of the complaint is, that Sarah S. Glenn, the wife of the assignor, was by the defendants prevented from purchasing 60 acres of the 160 acre tract sold by the assignee. They did not object to the sale of the farm, when it was knocked down by the auctioneer at $76.50 per acre to Jos. R. Manifold. In fact they expected and desired that the sale to him then made should stand and that he would transfer 60 acres of his purchase to Mrs. Glenn, at the same price per acre as he paid for it; and had he done this, no complaint would have been made. The thing done, of which they complain, is the transfer of 60 acres of the purchase to John Dye, by Jos. R. Manifold, in place of to Sarah S. Glenn. Therefore the plaintiffs cannot consistently claim that there was any fraud in the sale made on the premises to Jos. R. Manifold, because they sought to have him transfer 60 acres of his purchase to Mrs. Glenn, and requested the assignee to sanction this transfer. If there was any fraud, then, it must have been in the agreement entered into by the defendants, whereby 100 acres of this farm was to be conveyed to Manifold and 60 to Dye.

The testimony clearly shows that Manifold only wanted 100 acres of the farm, and that Dye only wanted 60 acres. If the farm was sold as a whole, either of them in buying it would get more than he wanted; and, surely under these circumstances there was nothing fraudulent in their agreement that one of them should bid off the whole farm, and let the other have of the purchase what he wanted at the price paid per acre for the whole. Mrs. Glenn herself recognized the fairness of such a proposition when she asked Mr. Manifold, as she testifies, to enter into the very same agreement with her as was made with Mr. Dye. This agreement between Manifold and Dye deterred no one from bidding. In fact, it added to the list of bidders on the farm offered as a whole, for neither Manifold nor Dye alone wanted the whole of it; but, having arranged to unite their means and divide the purchase, they then did want it.

The evidence fails to show that, at the time the farm was knocked down to Manifold the assignee knew anything of the agreement between Manifold and Dye. And even if he had known it, we do not see that it would make any difference. If they had a right to buy the property in that way, he had a right to sell it in that way. The assignee did nothing to prevent other persons from bidding against Manifold, or to have the auctioneer favor him; and how the knowledge on the part of the assignee of the fact that Manifold was bidding on the farm for himself and Dye, could be construed into evidence of fraud, we are unable to see. The sale was made by an auctioneer, and there is no claim that he knocked the property down to Manifold unfairly and at the instance of the assignee. And we think the master was right in finding that Manifold and Dye were bona fide purchasers of the land.

2. This brings us to the second reason urged why this sale should be set aside. The fact that the plaintiffs, after this controversy arose, have found persons who offer to bid or pay a higher price for this land if re-sold, is not conclusive evidence that it was sold at an inadequate price last August. It is more properly evidence that the price of land in and about Washington has increased since the date of the sale. The sale was well advertised, well attended and deliberately auctioned at public outcry, on the premises; and the presumption is that it sold at its market value at the time it was knocked down. And there is nothing in the evidence to show that the assignee ought to have adjourned the sale, or that he then had any assurance of getting a higher price had he adjourned it. The assignor's large indebtedness was increasing every day, and it was the duty of the assignee to sell at as early a day as possible.

Again; having found that Manifold and Dye are bona fide purchasers, who have paid part of the purchase money, a court of equity ought not to set aside their contract simply because somebody now comes forward and offers more money for the land, especially where that offer is not secured, and could be withdrawn at any time before accepted. We have no doubt Mrs. Glenn is sorely disappointed because she did not get the 60 acres, and it may be that the conversation that she had with Mr. Manifold was of such a character as to cause her to refrain from taking a different course from that she did take in regard

to the matter, but, even on her own showing, it was only a breach of a parol contract on the part of Mr. Manifold. On the whole case we think the master right in recommending that the plaintiffs' bill should be dismissed. Therefore, let a decree be prepared overruling the exceptions to the master's report and dismissing the plaintiffs' bill.

A formal decree having been entered, in accordance with the foregoing opinion, the plaintiffs took this appeal specifically assigning for error the order of the court dismissing their exceptions and confirming the report of the master.

*Mr. Albert S. Sprowls* and *Mr. John D. Braden*, for the appellants:

1. The court had jurisdiction. The relation between W. A. Mickey and the plaintiffs made it highly culpable in him to join in the furtherance of a scheme calculated and intended to work irreparable injury to his assignors. He was at the time their assignee,—their trustee,—of the very matter in controversy; and was bound by his office to sell the estate under every possible advantage to his cestuis que trust, with a fair and impartial attention to the interests of all parties concerned. If trustees, or those who act by their authority, fail in reasonable diligence in inviting competition, or in the management of the sale, as if they contract under circumstances of haste and improvidence, or contrive to advance the interests of one party at the expense of another, they will be personally responsible for the loss to the suffering party, and the court, however correct the conduct of the purchaser, will refuse at his instance to compel the specific performance of the agreement: 1 Lewin on Trusts, Am. L. S., *423, *616; Bispham's Eq., § 20; Diller v. Brubaker, 52 Pa. 505; Wormley v. Wormley, 8 Wheat. 421.

2. Under § 13, act of June 16, 1836, P. L. 789, the several courts of Common Pleas have the jurisdiction and powers of a court of chancery, so far as relates to "the control, removal and discharge of trustees, and the appointment of trustees, and the settlement of their accounts." No order was applied for by the trustee to sell the real estate of the assignors. The practice, therefore, is to proceed by bill in equity: Ex parte Hussey, 2 Wh. 329; Whitney's App., 22 Pa. 500. There is a

special reason why a court of equity, under the act referred to, has jurisdiction in the case in hand. It is sought in this proceeding to control the assignee, and regulate and correct his conduct, wherein it has been prejudicial and injurious to the assignors. The authorities already quoted certainly justify our position, but if any additional are needed, they are to be found in Patterson's App., 118 Pa. 571; Campbell v. McLain, 51 Pa. 200; Barnard v. Duncan, 38 Mo. 170 (90 Am. Dec. 416); Goodwin v. Mix, 38 Ill. 115; 1 Lewin on Trusts, Am. L. S., *422 n.; Fox v. Mackreth, 1 L. C. in Eq., 4th ed., 240; Bispham's Eq., § 199; 1 Story's Eq. J., §§ 184-5; Burke's Est., 1 Pars. 470; Bierbower's App., 107 Pa. 14; Brush Elec. L. Co.'s App., 114 Pa. 574; Adams's App., 113 Pa. 449.

3. Even if the assignee was not a party to the secret agreement, claimed to be established by the evidence [reviewed], it was contrary to public policy and fraudulent for Mr. Manifold and Mr. Dye to enter into an agreement whereby one of them was to do the bidding, purchase the whole tract, and the other to abstain from competing for the portion he desired, but both to participate in the purchase: Myers v. Hodges, 2 W. 383; Thompson v. Davies, 13 Johns. 110; Oram v. Rothermel, 98 Pa. 300. Where a sale is ordered by a court of chancery, very slight ground is required to be laid by a party in interest, to move the court to set aside the sale and let in higher bids, at any time before confirmation: Collier v. Whipple, 13 Wend. 224; Williamson v. Dale, 3 Johns. Ch. 290. So in the Orphans' Court, in this state: Hamilton's Est., 51 Pa. 61. In the case in hand, the assignee stands in no relation of trust or confidence to the purchasers: Fulton's Est., 51 Pa. 211. Nor do the purchasers stand in the position of innocent purchasers for value. It is the rule, that a purchaser without notice, to be entitled to protection, must be so not only at the time of the contract, but at the time of the payment of the purchase money: Wormley v. Wormley, 8 Wheat. 421; 2 Pomeroy's Eq. J., § 691; Union Canal Co. v. Young, 1 Wh. 410; Beck v. Uhrich, 13 Pa. 636.

*Mr. M. C. Acheson* and *Mr. M. L. A. McCracken* (with them *Mr. John Aiken* and *Mr. T. J. Duncan*), for the appellees:

1. Quoting the finding of the master, "It is not sufficient

to charge fraud, and to prove in support thereof slight circum-stances of suspicion only. To be of any avail it must be clearly proved. The law requires evidence of fraud to be such as will lead to a satisfactory conclusion, such as will satisfy the reasonable conscience and intelligent judgment: Morton v. Weaver, 99 Pa. 47; Mead v. Conroe, 113 Pa. 220." To these authorities cited by the master, may be added Young v. Edwards, 72 Pa. 257; Sylvius v. Kosek, 117 Pa. 67. The master in his report has gone over all the grounds of fraud alleged, and with signal ability disposed of every matter that was brought before him in the evidence; and the whole case is epitomized in the opinion of the court below, dismissing the plaintiffs' exceptions to the report. On these we are willing to rest our case, so far as the facts are concerned.

2. Upon the facts as presented by the plaintiffs before the master, a court of equity has no jurisdiction to grant the relief prayed for, because: (a) The plaintiffs have a full and complete remedy at law by exceptions to the assignee's account, whereby if he has been guilty of fraud or of mismanagement of the estate, they can obtain redress. (b) If the plaintiffs were injured by any secret fraudulent agreement under which the land was sold, they have a complete remedy against the defendants by action at law to recover damages. (c) Where parties are concerned in illegal agreements or other transactions, whether they are mala prohibita or mala in se, courts of equity, following the rule of law as to participators in a common crime, will not interpose to grant any relief: 2 Story's Eq. J., § 298; Hershey v. Weiting, 50 Pa. 244. Moreover, (d) neither of the defendants could be declared a trustee for Mrs. Glenn for the 60 acres, as nothing is alleged more than the violation of a naked promise to a stranger to the title, who has paid no part of the purchase money. Equity will not take jurisdiction in such case, to declare the purchaser a trustee: Robertson v. Robertson, 9 W. 32; Fox v. Heffner, 1 W. & S. 372; Jackman v. Ringland, 4 W. & S. 149; Wolford v. Herrington, 86 Pa. 39.

OPINION, MR. JUSTICE STERRETT:

In April, 1888, appellants, J. D. Glenn and wife, executed and delivered to W. A. Mickey, one of the appellees, a deed of

assignment in trust for the benefit of all the creditors of said J. D. Glenn. The deed was duly recorded and trust accepted by the assignee. According to the evidence, the liabilities of the assignor, including a judgment for $2,522.25 in favor of his wife, did not exceed $12,000. His assets consisted of personal property, from which about $1,000 was realized at the assignee's sale, August 30, 1888, and a farm of 160 acres, which on same day was struck down to Mr. Manifold, one of the appellees, at his bid of $76.50 per acre, amounting to $12,240. Prior to the sale, it was understood by the assignee that Mrs. Glenn desired to purchase a portion of the farm, and she was induced to believe that she would have at least an equal opportunity of doing so, with other bidders. With the view of offering the land in parcels, the assignee caused a survey to be made, and the farm divided, by a scaled line, into two purparts, one containing 60 acres, and the other, 100 acres. On the day of sale, the larger purpart was first offered, and bid up to $79.75 per acre by Mr. Manifold. The smaller purpart was then offered, and the highest bid therefor was $82 per acre, by Mrs. Glenn. The next lower bidder for same was Mr. Dye, the remaining appellee. Neither of these bids being accepted, the farm was then offered as a whole; but, no bid equal to the others having been received, it was again offered in parcels, and Mr. Manifold renewed his bid of $79.75 per acre for the larger piece. Without endeavoring to ascertain whether either Mrs. Glenn or Mr. Dye would renew their former bids for the smaller piece, or giving either of them an opportunity of doing so, the farm was again offered as a whole, and struck down to Mr. Manifold at $76.50 per acre. Before that was done, however, there was an understanding or agreement between Mr. Manifold and Mr. Dye, that if the former became the purchaser, the latter should have the smaller piece at same price per acre. Whether the assignee was fully informed of this agreement or not, is, perhaps, doubtful; but, before the property was struck down to Mr. Manifold, the latter asked him whether Mr. Dye would be accepted as purchaser of the smaller piece, and the reply was that he would. On same evening, after the parties had returned home, the assignee, being fully informed of the previous arrangement, agreed that Dye should be considered the purchaser of the smaller, and Manifold the purchaser of the larger

piece, at same price, viz., $76.50 per acre, and declared his purpose to convey to them accordingly. Before the sale was consummated by conveyance, however, the bill was promptly filed by the assignor and his wife, complaining of the conduct of the trustee and the alleged purchasers, and praying that the former be restrained and enjoined from executing and delivering a deed to the latter, or either of them, and that he be directed again to make public sale of said real estate, on terms and conditions most advantageous to the creditors and parties interested therein.

The foregoing and other facts substantially averred in the bill and found by the learned master are fully sustained by the pleadings and evidence. But it should be observed that the acts of the appellees mainly complained of are charged in the bill as having been done by them fraudulently and collusively. The master, in a very able and comprehensive report, after carefully reviewing the evidence, reached the conclusion that the alleged fraudulent and collusive qualities of said acts were not shown with sufficient clearness. He says he " has carefully considered all the evidence, and finds it inadequate to satisfy him that the defendants, or either of them, resorted to artifice or trickery to procure the land at less than its value, or to silence competition on the part of Mrs. Glenn, or that they, or either of them, entered into any secret agreement or fraudulent scheme to enable Manifold and Dye to procure the farm at an under-value." The quality of the acts complained of is to be inferred from the established facts and their surrounding circumstances, rather than from positive proof of collusive or fraudulent intent. But, accepting as correct the conclusion of the learned master that the proof of actual fraud was insufficient, the acts above recited must be accepted as established facts, and their legitimate consequences cannot be ignored. The bid that was finally accepted for the farm, as a whole, was $12,240, while the aggregate bids offered for it in purparts was $12,895, a difference of $655 in favor of the latter. The acceptance of the former necessarily involves a loss of the latter sum to the assigned estate, and a corresponding gain to the purchasers. The only reason suggested for selling the land as a whole, instead of in purparts, is that Mrs. Glenn was an irresponsible bidder. The first answer to that is that no opportu-

nity was afforded her of showing her responsibility. The terms of sale were 10 per cent down, one half on execution and delivery of deed, and residue on credit with security. What right had the assignee to assume that Mrs. Glenn would not comply with the terms of sale, in case she had become the purchaser of the smaller piece, and had been required to do so? None whatever. But, suppose she was unable to comply with the terms of sale, he had no right to assume that Mr. Dye, the next lower bidder for same purpart, would decline to take it at his bid, $81 per acre. He knew that Manifold was a bidder for the larger piece, and Dye a bidder for the smaller one, and that their aggregate bids, for the two pieces separately, amounted to nearly $600 more than he agreed to accept from them on the same day. Is it at all likely that any prudent man would thus deal with his own property? It is the duty of the court to guard against pecuniary loss to cestuis que trustent, resulting, not only from fraudulent acts, but also from the imprudent and improper conduct of trustees. Mrs. Glenn, although she was the wife of the assignor and a party to the deed of assignment, had a right to expect and receive, at the hands of the trustee, at least as fair treatment as any other bidder at the sale. There is no evidence that she demanded anything more. She was interested as a judgment creditor, and naturally desired to secure her claim, and use it as the means of saving part of their homestead. There was nothing improper in this; certainly, nothing that can be regarded as a justification of the trustee's conduct in refusing her bid, on the alleged ground of irresponsibility, without even affording her an opportunity of showing the contrary. But was she, in any proper sense of the term, an irresponsible bidder? The evidence shows she was not. The trustee himself is compelled, on cross-examination, to admit that the proceeds of the sale of the farm, at Mr. Manifold's bid, in connection with the proceeds of the personal property, was sufficient to discharge all the liabilities of the assigned estate : "Q. Didn't the land sell, as you sold it, for more than was necessary to pay Mr. Glenn's indebtedness? A. I think it would have paid it. Q. Would not there have been some money left? A. I don't know. There may have been some outstanding debts, which have not been exhibited. Q. Are there any of these liens that are not secured? A. No,

sir; I guess not.  Q. Would not the liens have been paid in full, and money left?  A. Yes, sir; I think they would."

If there would have been some money left at the bid which was accepted for the farm as a whole, it follows that the surplus would have been increased by from $600 to $700 by accepting the bids of Mr. Manifold and Mrs. Glenn for the separate parts, and the assignor would have been just that much better off.  The evidence shows very clearly that by accepting these bids the estate would have been the gainer, and the trustee would have incurred no increased risk.  The matter was practically in his own hands.  In addition to all this, the evidence shows that a responsible friend of Mrs. Glenn stood ready to assist her to the extent of at least $1,500; but no part of that would have been needed, if the trustee had been disposed to act fairly and reasonably.

It was the duty of the trustee to sell the assigned property for the best price he could obtain.  His co-defendants knew that he was attempting to sell the farm to them for about $600 less than the amount of their aggregate bids for same when it was offered in separate purparts, immediately before.  They knew, or ought to have known, that that was an improper and unjust mode of disposing of trust property, and have no just reason to complain if they are not permitted to reap the fruits of the undue advantage they thus obtained.

If the assignee had been selling under an order of court, the usual course for the parties aggrieved would have been to except to the sale, and ask the court to set it aside; but, having obtained the consent of creditors to sell, without an order of court, divested of liens, the assignee was not acting under any order of court, and hence the only course open to them was to file the bill.  In view of the facts established by the pleadings and evidence, there can be no doubt as to the jurisdiction of the court in the premises; and we are of opinion that the relief prayed for should have been granted.  Our act of assembly, in express terms, gives Courts of Common Pleas the jurisdiction and powers of a court of chancery, so far as relates, inter alia, to "the control, removal, and discharge of trustees," etc.  The trustee in this case has shown, as we think, by his acts, that he is a proper subject for the control of a court invested with equity powers.

The farm should again be offered at public sale, so as to afford all parties an opportunity of bidding for the same as a whole and in parcels, as heretofore divided, and sold in such way as will command the highest and best price, and be for the best interests of the assigned estate. The offers of admittedly responsible parties are sufficient to insure the realization of a sum more than enough to discharge the liabilities of the assignor and the legitimate expenses of administering the trust.

The percentage advanced by two of the appellees on account of their respective purchases, should be reimbursed, under the direction of the court, out of the proceeds of the sale, or otherwise.

> Decree reversed; and it is now ordered and decreed that W. A. Mickey, the trustee, be restrained and enjoined from executing and delivering a deed or deeds to the defendants Joseph R. Manifold and John Dye, or either of them, conveying the real estate in question, or any part thereof, under or by virtue of any alleged sale heretofore made to them, or either of them, and that the said W. A. Mickey pay the costs of this suit, including costs of this appeal; and it is further ordered that the record be remitted to the court below, with instructions to order a public sale of the farm referred to, in accordance with this opinion.